TREVOR J. HATFIELD, ESQ.
Nevada Bar No. 7373
**HATFIELD & ASSOCIATES, LTD.**
703 South Eighth Street
Las Vegas, Nevada 89101
(702) 388-4469 Tel.
(702) 386-9825 Fax
*thatfield@hatfieldlawassociates.com*

*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| NAVDEEP DHALIWAL, an individual;<br><br>    Plaintiff,<br><br>    vs.<br><br>MHM SOLUTIONS, LLC, a Foreign Limited Liability Company; STATE OF NEVADA BUREAU OF DISABILITY ADJUDICATION, a Department of the State of Nevada;<br><br>    Defendants. | CASE NO:  2:21-cv-00568-GMN-BNW<br><br>**SECOND AMENDED COMPLAINT**<br><br>**(Jury Trial Demanded)** |

COMES NOW, Plaintiff NAVDEEP DHALIWAL (hereinafter, "Plaintiff"), by and through his counsel, Trevor J. Hatfield, Esq., of the law firm of Hatfield & Associates, Ltd., and alleges upon information and belief against the above-captioned Defendants as follows:

### PARTIES

1.    At all times relevant hereto, Plaintiff, residing in Las Vegas, Clark County, Nevada, was and is an individual residing in the State of Nevada.

2.    Plaintiff, a physician, was an independent contractor with Defendant STATE OF NEVADA BUREAU OF DISABILITY ADJUDICATION, a Department of the State of Nevada, (hereinafter "BDA") from 2007 to 2009.  From 2009 to 2015, Plaintiff was an employee of BDA and was an employee according to federal common law and within the definition of

1

42 U.S.C. § 12101, Title I and V of the American's with Disabilities Act of 1990, and amendments thereto, (ADAA) and 42 U.S.C. Section(s) 1201 *et seq.* and laws of the State of Nevada.

3. In 2015, Defendant MHM SOLUTIONS, LLC (hereinafter "MHM") contracted with BDA to have Plaintiff provide the same services for BDA that he had done as an employee of BDA.

4. Upon information and belief, at all times relevant hereto, MHM is and was a foreign corporation or similar business entity organized and existing under Nevada law and which regularly conducted business in Nevada.

5. Defendants regularly employs fifteen or more persons.

6. All of the acts alleged herein and or failures alleged herein were duly performed by and or are attributable to Defendants, acting by and through their agents and employees. Said acts and or failures to act were within the scope of said agency and or employment, and Defendants ratified said acts and or omissions.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is predicated upon 28 U.S.C. Section 1331 and 1343, to redress the unlawful deprivation of Plaintiff's rights secured, guaranteed and protected by federal law. The Court also has jurisdiction pursuant to 28 U.S.C. Sections 2201 and 2202 relating to declaratory judgments. This Court may also exercise pendant jurisdiction over Plaintiff's state law claims arising under the common law and statutes of the State of Nevada, and which arise from a common nucleus of operative fact pursuant to 28 U.S.C. Section 1367.

8. Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. Section 1391(b), wherein Plaintiff resides, or resided, and Defendants reside or resided, and/or regularly conducts business and where all the wrongful conduct occurred.

///

///

**ADMINISTRATIVE PREREQUISITES**

9.      Plaintiff has complied with all the administrative prerequisites to action under Section 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sections 2000e-5 as follows:

10.     Plaintiff was terminated from his employment in July 2019, and Plaintiff thereafter timely filed an intake inquiry form to perfect, and did perfect, a formal charge of discrimination with the Nevada Equal Rights Commission [hereinafter "NERC"] in August 2019, regarding both Defendants.   NERC has a file sharing agreement with the Equal Employment Opportunity Commission [hereinafter "EEOC"].

11.     Plaintiff promptly and diligently accommodated all NERC and EEOC requests for information and fully cooperated in the investigation of his charge.

12.     Plaintiff has exhausted all available administrative remedies in accord with the aforementioned statutes prior to instituting this civil action, and Plaintiff has timely filed this action.

13.     Plaintiff demands a jury trial of this case pursuant to Local Rule 38-1 and 28 U.S.C. Section 1411.

**FACTUAL ALLEGATIONS**

14.     Plaintiff began working as a contractor for BDA/State of Nevada in 2007.   He performed his duties well and in December 2009 was offered a full-time employee position. He became a full-time employee of BDA/State of Nevada.   He was a "medical consultant", and his duties included reviewing medical records and providing medical opinion.   He did not have any direct patient care duties.   In September or October 2015 his and some others BDA employees' positions were again reverted to an ostensible independent contractor relationship through MHM.

15.     Plaintiff continued to work as a consultant for BDA without any period of work interruption with the exact same duties and with the exact same controls impressed upon Plaintiff as when he was employee with BDA.   His duties never changed as an independent contractor when

with BDA (2007-2009), as an employee with BDA (2009-2015), and later as contractor with MHM but working for BDA (2015-2019).  His work duties, performance, and training were directly monitored and were under direct supervision by a medical manager employed by BDA/State of Nevada.

16.    Upon information and belief and at all relevant times, certain individuals herein named below, including but not limited to Smolyansky, Paterson, Owings, were acting as supervisors, agents, servants and/or employees of BDA/State of Nevada.  Zhering acted as supervisor, agent, servants and/or employee of MHM.  Defendants are therefore liable for the acts and omissions of these individuals pursuant to the principals of ratification, respondeat superior, and actual and/or implied agency.

17.    Plaintiff has a medical issue with his hands and hand dexterity called "carpal tunnel syndrome & hand arthritis/arthralgia" (hereinafter "medical issues").  These medical issues cause Plaintiff difficulty in typing and doing repetitive use of hand work, a primary function of Plaintiff's job duties.  These medical issues are permanent, progressive, and irreversible, and are severe for Plaintiff.  His medical issues substantially limit a major life activity of Plaintiff, his ability to work, and causes him much difficulty in typing and performing his work duties.

18.    One common accommodation for these conditions is to use voice-activated software to alleviate having the need to type.  In 2017, Plaintiff first tried to obtain this software, called "Dragon," as a workplace accommodation and BDA/State of Nevada employee Stacie Paterson told Plaintiff that as he was a contractor, he should ask MHM for Dragon program despite knowing that Plaintiff was unable to purchase this Dragon himself due to BDA/Social Security Administration computer systems and security.  BDA employees Stacie Paterson, Bureau Chief, and Laura Smolyansky, an Information Technology Supervisor, did not want Plaintiff to have Dragon, despite it being common, easy to install, and was provided as a reasonable accommodation by the Social Security Administration, as BDA's information technology department had to manage Dragon in its secure system and BDA did not want to have to manage Dragon.

19.    Plaintiff's medical issues worsened over time as he continued to work without having Dragon.  During one of the meetings Paterson told Plaintiff that he needs to increase his work hours

4

and work on additional cases otherwise she would take away his workplace-provided laptop computer and give it to someone else in the department.   Plaintiff's option was to either quit the job or obtain Dragon and Plaintiff resolved to request and obtain Dragon as Plaintiff did not want to have to quit.

20.   In August 2018, Plaintiff contacted the Social Security Administration's Department for Reasonable Accommodation and was advised that Dragon was provided to employees and contractors as a workplace accommodation for medical conditions and that BDA management only needed to send a request.  Plaintiff emailed BDA manger Karin Owings and Smolyansky requesting Dragon software in August 2018.

21.   In March 2019, Plaintiff made a formal request for Dragon to Owings (Medical Manager BDA) and Zhering (MHM supervisor) after Plaintiff's physician provided a written request for Defendants to provide Plaintiff Dragon as a workplace accommodation for his medical issues, which he forwarded to both Ms. Owings (medical Manager BDA) and Zhering (MHM supervisor). Plaintiff was still not provided Dragon.  Nevada's Equal Employment Opportunity officer Donna Romo had to intervene and told BDA management to provide Dragon software to Plaintiff.  Plaintiff also came to know that some other employees working for BDA were provided Dragon or similar voice-recognition software, but not Plaintiff.  Then in May 2019, Paterson emailed Plaintiff a form to complete to request Dragon as a workplace accommodation. Plaintiff completed the required paperwork and forwarded to BDA management.

22.   In December 2018 Plaintiff questioned BDA's requirements that he must work at least six (6) hours per day in his workplace office as opposed to working remotely on a laptop. Plaintiff contacted MHM's manager Zhering in winter of 2019 with concerns that he and some other providers in BDA were misclassified as an independent contractor and was promised by Zhering that his concerns would be addressed. Zhering failed to follow up with Plaintiff even after a reminder. MHM did not ever address his concerns.  MHM therefore deceitfully and intentionally failed to apprise Plaintiff that he was being falsely misclassified as an independent contractor.

23.   In March 2019, from March 10, 2019 to March 16, 2019, Plaintiff performed over fifty (50) hours of work in a workweek but was not paid overtime.  He performed nearly 9 hours of

work on March 12, 2019 and 10 hours on March 14, 2021.  Based upon information and belief, neither Defendant posted a United States Department of Labor required Fair Labor Standard Act (FLSA) poster that Plaintiff viewed to apprise him of a potential overtime claim with Defendants.

24.     Plaintiff was not permitted to hire anyone to assist him in his services or to assign his services to other persons. He was also not permitted to perform his work wherever he chose and was not hired for any specific tasks or time frame.  Plaintiff was treated as an employee of BDA/State of Nevada despite there being an hourly pay independent contractor's agreement with him and MHM for Plaintiff to work for BDA/State of Nevada.

25.     Plaintiff was discharged by Defendant MHM's manager Zhering in July 2019.  The contract between Plaintiff and MHM specifically states that Plaintiff will be provided thirty (30) days' prior written notice prior to termination.   MHM provided notice but did not provide or state any reason other than BDA did not require his services any longer.  There was no issue or event which provided cause for Plaintiff's termination in July 2019 other than that Plaintiff reported to both BDA and MHM management about misclassification of his and some others position in the department and requested Dragon software for medical reasons.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION

### (Failure to Accommodate and Wrongful Termination Under the ADAA)

26.     Plaintiff requested a reasonable accommodation of receiving the Dragon software for his disability, which Plaintiff was entitled as Plaintiff was misclassified as an independent contractor when he was an employee.  Defendants refused to engage in any interactive process and refused to provide a reasonable accommodation to Plaintiff even though a reasonable accommodation was requested by Plaintiff.

27.     Defendants continually, intentionally, and in a discriminatory manner refused to accommodate Plaintiff by providing for the Dragon software although it was reasonable to do so.

28.     Defendants' termination of Plaintiff was not based upon any other reasonable reason and was discriminatory as to Plaintiff.  Defendants terminated Plaintiff without just cause and

because of his disability and requests for accommodation, and such adverse employment actions by Defendants were in violation of the ADAA.

29.     Following Defendant's termination of Plaintiff, based upon information and belief, MHM placed an advertisement to hire another individual for similar work for BDA/State of Nevada as was Plaintiff.

30.     As a result of Defendants' above-stated actions, Plaintiff has suffered irreparable injuries and deprivation of income in the form of wages and prospective benefits, promotion opportunities and job assignments due to him as an employee, and emotional pain and suffering, mental anguish, humiliation, embarrassment, indignity, and other intangible injuries in an amount to be proven at trial.

31.     Plaintiff should be awarded punitive damages as well because of MHM's extreme and outrageous conduct.  As a further result of Defendants' above-stated actions, it has been necessary for Plaintiff to obtain the services of the law offices of Hatfield & Associates, Ltd., to prosecute this action, and Plaintiff is entitled to reimbursement for those attorney's fees and costs, which have been reasonably incurred.

### SECOND CAUSE OF ACTION

### (Retaliation in Violation of the ADAA)

32.     Defendants' conduct as detailed herein was in fact illegal.  Defendants grew wearisome of Plaintiff's request for a workplace accommodation and his concerns that he and some others were misclassified as an independent contractor and were, in fact, being exploited, and therefore Defendants decided to terminate Plaintiff.  Plaintiff was terminated in retaliation by Defendants for engaging in a protected activity in requesting an accommodation and reporting that he was misclassified as an independent contractor and other protected activity.

///

33.     As a result of Defendant's above-stated actions, Plaintiff has suffered irreparable injuries and deprivation of income in the form of wages and prospective benefits, promotion opportunities and job assignments due to them as employees, and emotional pain and suffering, mental anguish, humiliation, embarrassment, indignity and other intangible injuries in an amount to be proven at trial.

34.     Plaintiff should be awarded punitive damages as well because of MHM's extreme and outrageous conduct and retaliation.  As a further result of Defendants' above-stated actions, it has been necessary for Plaintiff to obtain services of the law offices of Hatfield & Associates, Ltd. to prosecute this action, and Plaintiff is entitled to reimbursement for those attorney fees and costs which have been reasonably incurred.

### THIRD CAUSE OF ACTION

### (Violation of the FLSA – Failure to Pay Overtime Wages to Plaintiff)

35.     This claim arises from Defendants' violation of the FLSA, 29 U.S.C. § 201, *et seq*., for its failure to pay Plaintiff overtime wages.

36.     At all times material hereto, Plaintiff was employed by Defendants as an "employee" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).  Plaintiff was not compensated for overtime worked during his work shift nor was Plaintiff provided any compensatory ("comp") time for overtime worked during his work shift.

37.     Defendants have a policy, program, or practice it implemented to fail or refuse to pay employees' time worked over forty (40) hours per week to avoid overtime.  In truth, Plaintiff repeatedly worked more than forty hours per week.  Defendants failed to keep accurate records of time non-exempt employees worked, in violation of 29 C.F.R. § 516.2 *et seq.*

38.     In March 2019, Plaintiff performed over fifty (50) hours of work in a workweek but was not paid overtime.  Based upon information and belief, neither Defendant posted a United States

Department of Labor required Fair Labor Standard Act (FLSA) poster that Plaintiff viewed to apprise him of a potential overtime claim with Defendants.

39.     Plaintiff contacted MHM's manager Zhering in winter of 2019 with concerns that he and some others were misclassified as an independent contractor and was promised by Zhering that his concerns would be addressed, however, MHM did not ever address his concerns.   MHM therefore deceitfully and intentionally failed to apprise Plaintiff that he was being falsely misclassified as an independent contractor, and therefore "willfully" violated the FLSA.   See, 29 U.S.C. §255(a).

40.     At all times relevant, Plaintiff, was employed by Defendants in a non-exempt position and is entitled to 1.5 times his regularly rate in overtime wages for all hours worked over 8 hours per day and 40 hours in a week pursuant to 29 U.S.C. § 207.

41.     Plaintiff was subject to a policy that willfully deprived him of overtime wages for work performed that benefited Defendants.   Upon information and belief, this practice of failing to pay employees and effectively forcing them to work off-the-clock is common practice of Defendants.

42.     Defendants did not compensate Plaintiff and those similarly situated at a rate of 1.5 times his regular hourly rate of pay for all time worked in excess of 8 hours per day and 40 hours in individual workweeks, as required by the FLSA.

43.     Defendants' refusal and failure to pay lawful wages, including overtime wages, to Plaintiff and those similarly situated for all time worked in excess of 40 hours per week violated 29 U.S.C. § 207.   Per the FLSA, Plaintiff seeks all available damages including but not limited to wages, liquidated damages, attorneys' fees, punitive damages (as permitted by law) and costs.

///

///

1

2

**FOURTH CAUSE OF ACTION**

**(Retaliation in Violation of FLSA)**

3

4

44.    The Fair labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, applied to

5

Plaintiff's employment with Defendants at all times relevant.

6

45.    29 U.S.C. § 215(a)(3) prohibits employers from discharging or discriminating in any

7

other manner against an employee for complaining about violations of FLSA;

8

46.    Plaintiff engaged in protected activity under FLSA by complaining to about unpaid

9

overtime and misclassification.   Plaintiff's employment was terminated by Defendants for

10

complaining. Per the FLSA, Plaintiff seeks all available damages including but not limited to

11

wages, liquidated damages, attorneys' fees, punitive damages (as permitted by law) and costs.

12

**REQUEST AND PRAYER FOR RELIEF**

13

14

WHEREFORE, Plaintiff prays for judgment and damages against Defendants as follows:

15

1.    There exists between the parties a justiciable controversy, regarding the rights and

16

obligation of the parties under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*

17

(FLSA) or state statutes as set forth herein, above, and any independent contractor agreement that

18

19

may exist between the parties, or whether, or not, the contract is valid and whether or not Plaintiff

is, or is not, an independent contractor pursuant to interpretation of statute.  A court of jurisdiction

20

21

is empowered to determine the rights and liabilities of parties pursuant to a contract, or a statute,

pursuant to Federal Rule of Civil Procedure 57.

22

23

2.    The issues involved herein are ripe for judicial determination and Plaintiff seeks

24

Declaratory Relief as well as compensatory damages and attorney's fees and costs.

25

3.    Enter an injunction ordering Defendants to make Plaintiff whole with full back pay,

26

benefits, and reinstatement of sick leave time that Plaintiff would have obtained in the absence of

27

discrimination or, in the alternative, front pay;

28

4.      An award to Plaintiff for compensatory damages in amount to be shown at trial for past and future economic and non-economic losses within this Court's jurisdiction subject to proof, for violation of statute, or compensatory damages in the alternative for breach of contract;

5.      An award to Plaintiff for general damages, including but not limited to emotional distress damages, within this Court's jurisdiction subject to proof;

6.      An award to Plaintiff for exemplary and/or punitive damages;

7.      An award to Plaintiff for reasonable attorney's fees and costs;

8.      An award to Plaintiff for interest on any awards at the highest rate allowed by law;

And such other and further relief as this Court deems just and appropriate.

Dated this 7th day of September 2021.                    **HATFIELD & ASSOCIATES, LTD.**

By: _/s/ Trevor J. Hatfield_____
Trevor J. Hatfield, Esq. (SBN 7373)
703 South Eighth Street
Las Vegas, Nevada 89101
(702) 388-4469 Tel.
*Attorney for Plaintiff*

**Certificate of Service**

I certify that on the 7th day of September 2021 I electronically filed **SECOND AMENDED COMPLAINT** with the Clerk of the Court using the ECF system which served the parties hereto electronically.

Dated this September 7, 2021.                    **HATFIELD & ASSOCIATES, LTD.**

By: __/s/ Freda P. Brazier_____
An employee of Hatfield & Associates, Ltd.